## HARMAR COAL CO. v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania.
February 14, 1928.

No. 3071.

Internal revenue ⊚⇒9(23)—Corporation organized for profit and owning property and stock of another company for profit was "doing business," and liable for excise tax; "business" (Revenue Acts 1918 and 1921, § 1000 [Comp. St. § 5980n]).

Corporation organized for profit, and owning 400 acres of coal lands and a house and lot and stock of another coal company, all for continued effort of profit and gain, was "doing business," and liable for excise tax under Revenue Act 1918, § 1000, and Revenue Act 1921, § 1000 (Comp. St. § 5980n), imposing special excise tax with respect to carrying on or doing business; "business" being that which occupies time, attention, and labor of men for purpose of livelihood or profit, and it is a very comprehensive term, which embraces everything about which a person can be employed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Business; Doing Business.]

At Law. Action by the Harmar Coal Company against D. B. Heiner, Collector of Internal Revenue for the Twenty-Third District of Pennsylvania. Judgment for defendant.

Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

J. D. Meyer, U. S. Atty., of Pittsburgh, Pa., and C. M. Charest and L. H. Baylies, of the Bureau of Internal Revenue, both of Washington, D. C., for defendant.

SCHOONMAKER, District Judge. A jury trial was waived in this case. It is a suit to recover the amount of certain capital stock excise taxes alleged to have been erroneously collected from the plaintiff for the taxable period from July 1, 1921, to June

30, 1923. The taxes involved were levied under section 1000 of the Revenue Act of 1918 (40 Stat. 1057–1126 [Comp. St. § 5980n]), and section 1000 of the Revenue Act of 1921 (42 Stat. 227–294 [Comp. St. § 5980n]), respectively. This section of both acts is the same. Both statutes impose "a special excise tax with respect to carrying on or doing business." Both exempt "any corporation which was not engaged in business * * * during the preceding year ending June 30th."

The plaintiff claims exemption because it was not engaged in business during any of the taxable periods. We make the following findings of fact in this case:

### Findings of Fact.

On the 19th of December, 1923, the plaintiff paid to the defendant capital stock excise taxes for the year ending June 30, 1921, $2,027; for the year ending June 30, 1922, $2,025; for the year ending June 30, 1923, $2,028—aggregating $6,080. In due form, the plaintiff filed with the Commissioner of Internal Revenue claims for refundment of each of said taxes respectively, which refundment was entirely rejected by said Commissioner. Thereafter the plaintiff brought this suit for the recovery of these taxes.

The plaintiff is a Pennsylvania corporation, chartered in 1912 for the purpose of "mining, preparing for market, and selling coal, manufacturing and selling coke and such other minerals as may be incidentally developed, and their products."

Another corporation, by the name of the Bessemer Coal & Coke Company, also a Pennsylvania corporation, organized the plaintiff corporation, and has been its sole stockholder since organization. The plaintiff acquired certain coal properties in the years 1912 and 1913, but never operated any of them for the production of coal therefrom. In its capital stock tax returns, the plaintiff stated its business as that of "buying and selling coal lands." In a letter to the Deputy Commissioner of Internal Revenue, its attorneys stated the purpose of organizing the plaintiff corporation as follows:

"Purchasing, leasing, and acquiring coal lands of operating, controlling and managing properties for the mining of coal and the manufacture of coke in the state of Pennsylvania, and other states, of mining, preparing for market, selling, and shipping coal and its products, and of purchasing, leasing, renting, and acquiring in the state of Pennsylvania, and other states, land and other property necessary or convenient in mining, preparing for market, and shipping coal and

its products and doing the business of the company."

Prior to the taxable periods in question in this suit, the plaintiff had sold some of its coal lands, but, during the taxable years, held 400 acres of undeveloped coal lands. These coal lands were subject to certain mortgages, either existing at the time of purchase, or given to secure balance of purchase money, on which the Bessemer Coal & Coke Company paid, during the taxable periods, the interest and certain installments of principal. This latter company likewise paid, during the same period, the taxes accruing against the plaintiff company, its legal expenses, and premiums on fire insurance on a building owned by the plaintiff. The several items of disbursement were charged by the Bessemer Coal & Coke Company to the plaintiff, and were credited to that company by the plaintiff upon its books.

During the taxable periods, the plaintiff also owned all of the capital stock of still another Pennsylvania corporation; i. e., Indianola Coal Company. This stock was purchased prior to the taxable periods involved here. The plaintiff paid part cash therefor and gave notes for the balance of the purchase money, some of which were liquidated as they fell due during the taxable year, by the Bessemer Coal & Coke Company, and they were credited to that company upon the books of the plaintiff.

In addition to that, during the taxable period, namely, on or about September 21, 1920, the plaintiff acquired title to a house and lot on Franklin street, North Side, Pittsburgh, Pa., subject to a mortgage of $2,500, the payment of which by the Bessemer Coal & Coke Company for the account of the plaintiff constituted the entire consideration. The legal title to this piece of real estate had been in the name of an officer of the Bessemer Coal & Coke Company for about 20 years prior to this date, as a trustee for that company, which furnished the money to buy it. This conveyance was made at the request of the Bessemer Coal & Coke Company. This real estate was rented at an annual rental of approximately $400.

During the taxable period the plaintiff held directors' meetings, elected officers, and maintained its corporate existence.

### Conclusions of Law.

Under this state of facts, we conclude that the plaintiff is not entitled to recover; and that judgment should be entered for the defendant.

## Discussion.

We arrive at this conclusion because, in our opinion, the plaintiff corporation was carrying on or doing business during the taxable periods. In arriving at this conclusion, we have noted very carefully the various decisions of the Supreme Court bearing upon the question of corporate liability to this excise tax.

We note, first, that the tax is assessed upon "doing business," and business has been defined by the Supreme Court in the case of Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357 (55 L. Ed. 389, Ann. Cas. 1912B, 1312), as follows:

" 'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict. 158, citing People v. Commissioners of Taxes, 23 N. Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' Bouvier's Law Dictionary, vol. I, p. 273 [406]."

We note further that the decision in each case must depend upon the particular facts before the court, and that in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516, 37 S. Ct. 201, 204 (61 L. Ed. 460), the Supreme Court, Mr. Justice Day delivering the opinion, had this to say with reference to the test applicable to such facts:

"The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

Then, again, the Supreme Court, further dealing with this subject in the case of Edwards v. Chile Copper Co., 270 U. S. 452, 455, 46 S. Ct. 345, 346 (70 L. Ed. 678), had this to say with reference to the application of this statute:

"The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit."

In the instant case we find that the plaintiff corporation was organized for profit, and was doing what it principally was organized to do, to realize profit. It therefore comes strictly within the interpretation of the Supreme Court in the case of Edwards v. Chile Copper Co., supra.

The Supreme Court again spoke on the same subject in a per curiam opinion handed down on the 2d day of May, 1927, in Phillips v. International Salt Co., 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323, reversing, on the authority of Chile Copper Co. v. Edwards, supra, the decision of the Circuit Court of Appeals, 3d Circuit, reported in 9 F.(2d) 389, which had held that the salt company, having received and distributed dividends, indorsed notes of a company whose stock it held, and purchased bonds for the retirement or sinking fund purposes, was not doing business.

The Supreme Court has held in the cases of Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428, and McCoach v. Minehill Railroad Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842, that corporations which retained some active functions were not doing business, were companies which had ceased to do the business for which they were originally incorporated, and which had reduced their activities to the owning and holding of property and the distribution of the avails of that property, and which were doing only such acts as were necessary to continue that status.

We cannot find that the plaintiff falls within this class of cases. During the whole of the taxable period it was continuing in the business for which it was incorporated, owned and held 400 acres of coal lands, and owned a house and lot and the stock of another coal company, all for the continued effort of profit and gain. The only case that we could find, where a corporation which was carrying out the functions for which it was chartered was held not to be doing business within the meaning of the statute, was the case of United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, where the characteristic charter function was the bare receipt and distribution to the stockholders of rent from a specified parcel of land. It was held by the Supreme Court to be a mere intermediary for the distribution of rent, and therefore not doing business. In no sense can the plaintiff's situation fall within the intermediary class.

We therefore must conclude that this tax was justly collected from the plaintiff, and that the plaintiff cannot recover in this case.

Let an order be submitted for the entry of judgment in favor of the defendant.