## HARMAR COAL CO. v. HEINER, Collector of Internal Revenue.

Circuit Court of Appeals, Third Circuit. September 23, 1929.

Nos. 3968–3972.

W. A. Seifert, William W. Booth, and Smith, Shaw & McClay, all of Pittsburgh, Pa., for appellants.

John D. Meyer, U. S. Atty., and John A. McCann, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lyndon H. Baylies, both of Washington, D. C., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and FAKE, District Judge.

WOOLLEY, Circuit Judge. The plaintiff corporations, after payments under protest, brought this group of cases to recover excise taxes for the years 1921, 1922 and 1923 levied under section 1000 of the Revenue Acts of 1918 (40 Stat. 1057, 1126) and 1921 (42 Stat. 227, 294) with respect to "carrying on or doing business." The plaintiffs, claiming exemption from the capital stock tax because, as they maintain, they were not doing business during the tax periods within the meaning of the acts, waived trial by jury and, the defendants assenting, tried their cases to the court, which entered judgment in each suit for the defendant collector. The taxpayers are here on separate appeals.

These cases were argued on the theory that the determination of the question whether the plaintiff corporations were "carrying on or doing business" in the sense of the acts depends upon whether they fall on the facts within a line of Supreme Court cases holding that the corporations there concerned were doing business, or within a line of cases holding that the corporations were not doing business. Whether the cases at bar fall within or outside one or the other of these opposite lines depends largely on the facts of the many adjudged cases and involves a study of the facts of each case in relation to

the facts of the cases at bar and calls for decision in each instance, one way or another, very much according to the mental view point of the judge rather than decision controlled by some definite principles. We feel that the proper way to approach this question—often perplexing because often on the border line—is not to search the Supreme Court decisions for cases similar to these on the facts and decide the question by matching the cases—which is practically what we did in Public Service Railway Company v. Herold (C. C. A.) 229 F. 902—but rather to look for and find the principles which move the Supreme Court in distinguishing between a corporation doing business and one not doing business and apply them to the cases in hand.

Cases of the character of the ones on appeal had their rise under that portion of the Tariff Act of 1909 (36 Stat. 11, 112, § 38) which became known as the Corporation Tax Law containing a provision for an excise tax upon the privilege of doing business, re-enacted in succeeding revenue acts. In determining whether a corporation was doing business the Supreme Court was first to recognize, and depart from, the definition of business, which it stated to be "a very comprehensive term and embraces everything about which a person can be employed"; "that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. It realized at once that certain corporate acts "about which a person can be employed" or in which a corporation may engage concern only the maintenance of corporate existence and have no relation to the conduct of business for which a corporation is organized, while other corporate acts are done and performed solely in furtherance of that business without relation to the maintenance of the corporation. On this distinction it held that in respect to the former, the law does not impose a tax, and in respect to the latter it does. Between these opposite positions many cases have arisen where there were corporate acts partaking of the nature of business transactions but pursued under circumstances that indicated performance of past contractual undertakings rather than the conduct of current corporate business for profit. In this zone between definite extremes courts have held that the statute imposes an excise tax not because of every act performed by a corporation under its incidental powers, but upon the privilege of doing and carrying on

the business for which it was organized, and when the corporation ceases the conduct of such business by turning it over to be carried on by another it ceases to be subject to the tax so long as it commits no act by which the resumption of its business is to be inferred. Anderson v. Morris & Essex R. R. Co., 216 F. 83 (C. C. A. 2d); N. Y. C. & H. R. R. Co. v. Gill, 219 F. 184 (C. C. A. 1st); Lewellyn v. Pittsburgh, B. & L. E. R. R. Co., 222 F. 177 (C. C. A. 3rd); Traction Companies v. Collectors, 223 F. 984 (C. C. A. 6th); United States v. Emery-Bird-Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; McCoach v. Minehill & Schuylkill Haven R. Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842.

In the early cases of Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, and Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428, preceding the case of United States v. Emery, 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825, where it was said that "the question is rather what the corporation is doing than what it could do," the Supreme Court held that "corporations organized for the purpose of doing business, and actually engaged in such activities as leasing property, collecting rents, managing office buildings, making investments of profits * * * dividing profits, and in some cases investing the surplus, are engaged in business within the meaning of this statute, and in the capacity necessary to make such organizations subject to the law," but that a corporation whose sole purpose is to hold title to a single parcel of real estate subject to a long lease and for convenience of the stockholders to receive and distribute the rentals, "and which has disqualified itself from doing any other business," is not a corporation doing business within the meaning of the corporation tax provisions of the Tariff Act of 1909. The line between doing business and not doing business the court pointed out in United States v. Emery, supra, lies between Cedar Street Company v. Park Realty Company, one of the Flint v. Stone Tracy Co. cases, 220 U. S. 107, 170, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, and Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428, stating that the latter case was carried perhaps a little farther by McCoach v. Minehill R. R. Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842, where the activities of the corporation in respect to its leased properties covered something more than the maintenance of its corporate existence and distri-

bution of rentals yet where it had ceased to do the business of railroading for which it was incorporated.

Following the Minehill decision lower courts were inclined—or induced—to broaden the range of non-taxable corporate activities until cautioned by the decision in Von Baumbach v. Sargent Land Company, 242 U. S. 503, 516, 37 S. Ct. 201, 61 L. Ed. 460, and checked by the decision in Edwards v. Chile Copper Company, 270 U. S. 452, 46 S. Ct. 345, 346, 70 L. Ed. 678, and Phillips v. International Salt Company (C. C. A.) 9 F. (2d) 389; Id., 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323.

In the Sargent Land Company Case the court, recognizing that a decision whether a corporation is carrying on business within the meaning of the Corporation Tax Law must depend in each instance upon the particular facts before the court and recognizing also that not everything that is done constitutes doing business but rather that it is the purpose for which a thing is done that places the corporation within or beyond the statute, held that a fair test of the question is "between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

In the International Salt Company Case the Supreme Court evidently made a distinction between the bare existence of an intermediary corporation functioning dryly as in United States v. Emery-Bird-Thayer Realty Company and Zonne v. Minneapolis Syndicate, supra, and a holding corporation with an eye to profits as in the Chile Copper Company and International Salt Company Cases, supra, where, owning and voting the capital stock of underlying companies, they borrowed and loaned money, purchased, exchanged and authorized the issue of bonds and did sundry acts other than the direct and actual operation of mines.

■ In the Chile Copper Company Case the court found that it was organized for profit and "was doing what it principally was organized to do in order to realize profit." Continuing, it said: "The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent

to when not pursuing the acts for which the corporation was organized, in the case where the end is profit." In other words, these decisions indicate, not exclusively perhaps yet quite clearly, that when a corporation is organized for one definite purpose, the ultimate object of which is profits, and it engages in the business of effectuating that purpose and then stops the business by reason of sale, lease, or other action, and thereafter simply hangs on, in a corporate sense, receiving and distributing the avails of its re-organized affairs, it is not doing business. On the other hand a corporation, organized for a definite though limited business purpose involving profits, that pursues activities to carry out that purpose, no matter how few or small they may be, is carrying on or doing business within the meaning of the statute. We shall apply these tests to the facts of the cases under consideration.

The plaintiffs are three closely related corporations: Bessemer Coal & Coke Company, Harmar Coal Company and Indianola Coal Company, each with power under its charter (differently expressed) to engage in mining and selling coal, manufacturing and selling coke and such other materials as may be incidentally developed, and each stating in its capital stock tax returns that during the tax periods it was in the business of buying and selling coal lands. Bessemer was the first organized and, having brought into existence the other two, is seemingly the parent corporation, owning all the capital stock of Harmar which in turn owns all the stock of Indianola. During the tax periods all the corporations regularly elected officers, held directors' meetings and generally performed the acts necessary to maintain their corporate existence.

Harmar Coal Company v. Heiner, Collector. No. 3968, October Term, 1928.

■ As to the business which this plaintiff did during the tax years, it is conceded that it was not engaged in mining and selling coal. Some time before the tax years it acquired undeveloped coal properties and had sold all but 400 acres. During the tax years it continued to hold these 400 acres subject to certain mortgages either existing at the time of purchase or given to secure a part of the purchase money on which Bessemer paid during the tax periods the interest and certain installments of the principal. Bessemer also paid during the same periods taxes accruing against the plaintiff, its legal expenses and premiums on fire insurance. These several items of disbursements were charged

by Bessemer to the plaintiff and credited by the plaintiff to Bessemer upon its books. The plaintiff also owned and held all the capital stock of Indianola, purchased prior to the tax periods. For this stock it paid part cash and gave notes for the balance of the purchase money, some of which were paid by Bessemer as they fell due during the tax years and credit therefor was given Bessemer upon the plaintiff's books. In addition, during the tax periods, the plaintiff at the request of Bessemer acquired title to a house and lot in Pittsburgh, subject to a mortgage of $2500, payment of which by Bessemer for account of the plaintiff constituted the entire consideration. This real estate yielded an annual rental of about $400.

Was the plaintiff carrying on or doing business within the meaning of the Revenue Act? Certainly it was doing something. While it never mined and sold coal, it held coal lands, a thing it originally did within its corporate powers and the specific thing it evidently was organized to do. It does not appear that it acquired and held the Indianola stock and the coal lands in trust, or otherwise than for profit. It admitted that from its Pittsburgh property it received profits in the form of rentals. In owning the stock of Indianola and voting it and holding the real estate the plaintiff was pursuing the ends for which it was organized, without diminution of or change in its activities, which, though few and small, were none the less business activities. Looking at these transactions as a whole, it is clear that the plaintiff is more than an inert corporate instrumentality of Bessemer. Finding they constitute doing business in the sense of the Revenue Act, the judgment of the trial court is affirmed.

Indianola Coal Company v. Lewellyn, Collector.
Indianola Coal Company v. Heiner, Collector.

Nos. 3969 and 3970, October Term, 1928.

■ The plaintiff, though it never mined and sold coal, acquired a large acreage of undeveloped coal lands shortly after it was incorporated. Prior to the tax years in question it sold some of the land and continued to hold the balance, about 5,000 acres. Aside from its formal corporate activities, its business transactions were more numerous and varied than those of Harmar. It held these 5,000 acres of land for sale or development; loaned money and received interest on loans made; borrowed money and paid interest thereon; paid taxes and legal expenses; sold securities and bonds held by it and in 1919 bought one tract of coal land for a substantial consideration and one parcel for a very small consideration; and in 1920 another parcel for a small consideration; all involving profits earned or hoped for. If the business of Bessemer, the parent company, could not be carried on without the plaintiff taking part in it, each must pay, by the plain words of the Acts. Edwards v. Chile Copper Company, 270 U. S. 452, 456, 46 S. Ct. 345, 70 L. Ed. 678.

The judgments of the trial court are affirmed.

Bessemer Coal & Coke Company v. Lewellyn, Collector.
Bessemer Coal & Coke Company v. Heiner, Collector.

Nos. 3971 and 3972, October Term, 1928.

■ Although the court did not find that during the tax years Bessemer bought, sold or otherwise dealt directly in mining and selling coal, or in acquiring or selling coal properties, the plaintiff in its capital stock tax returns stated that its business was "mining and shipping coal and dealing in coal properties" and "owner of coal lands through Harmar-Indianola Coal Company." Aside from its formal corporate activities the plaintiff, throughout the tax periods, owned and voted the stock of Harmar; made advances of legal expenses and taxes; made payments on principals of Harmar's notes and interest on the same; bought and sold bonds; and bought stock of the Union Collieries Company for the sum of $1,195,000. This stock it either sold or continued to hold manifestly for profit.

The judgments of the trial court are affirmed.