## WISCONSIN LAND & LUMBER CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 7095.

Circuit Court of Appeals, Sixth Circuit.

Feb. 12, 1937.

George E. H. Goodner, of Washington, D.. C., for petitioner.

W. F. Wattles, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., on the brief), for respondent.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The review here sought is of decisions of the Board of Tax Appeals upon deficiencies asserted by the respondent in respect to the petitioner's income and excess profits taxes for each of the fiscal years ending November 30th, from 1917 to 1924, inclusive. The issues relate (1) to the ascertainment of the cost of timber

lands included in invested capital, and (2) to the application to depreciable assets for the purpose of arriving at invested capital of a depreciation rate differing from that applied to the same assets when determining loss through obsolescence for the purpose of arriving at net income.

The petitioner is a Michigan corporation organized in 1900 to engage in the lumber manufacturing business. At its organization it acquired from a predecessor company certain lands in Michigan which the Board found had cost $1.50 per acre, not including standing timber. Subsequently the petitioner purchased additional land at an average cost of $1.24 per acre. On November 30, 1916, it had on hand 99,660.30 acres, which for the purposes of ascertaining invested capital the Board of Tax Appeals found had cost the petitioner $107,063.12, or $1.07 per acre. The only explanation for a finding of cost based neither upon cost of lands originally nor on cost of land subsequently acquired, nor yet upon average cost of all of petitioner's land, would seem to lie in circumstances to be presently disclosed.

Prior to the tax years here involved, the petitioner had disposed of 7,734.62 acres of land. To the acreage sold, the Board assigned a cost of $5 per acre. The resulting computation revealed net cost for the remaining land to be $107,063.12, or $1.07 per acre. The specific lands sold during the period 1900 to 1916, and their cost to the petitioner, do not appear. It is to be inferred, however, that the Board's finding in respect to cost of lands disposed of was based upon the contention in the petitioner's brief to the Board that all acreage acquired in 1900 had cost the petitioner in excess of $5 per acre, and a construction of that contention as an admission against interest. The argument made to the Board in that connection was that since all of the lands originally acquired were paid for in stock, and since the total sales of its predecessor for a period prior to 1900 of similar lands had been at an average price of $5.26 per acre, the land value gave a value to the stock equivalent to $5 per acre, and so determined its cost. The Board, however, rejected the petitioner's contention, and found the cost of the petitioner's land acquired in 1900 to be $1.50 per acre. The petitioner has now acquiesced in this finding, and contends for no greater cost than that which the Board found.

The respondent concedes that the record discloses neither the particular acreage sold nor its cost, though he suggests that some of the land which the petitioner bought after its organization appears to have cost more than $5 per acre. He ventures the opinion, however, that the Board in determining the cost of land sold relied not upon evidence of actual cost, but upon admissions, and with refreshing candor suggests that the petitioner's argument was not intended as an admission that the land sold had cost $5 an acre, save in the event that the Board should also have found that the remaining acres acquired for stock had likewise a value of $5 per acre when acquired. Viewing the respondent's suggestion not as confession of error but dictated by commendable desire to be frank and fair with the court, we have explored the record and fail to find any evidence to support a finding that the lands cost $5 per acre. If it be assumed, as it frequently is with respect to other assets, that lands first sold were those first acquired, the record will sustain a cost finding of $1.50 per acre. If no such assumption is made, and all costs are averaged, the record will, upon equally persuasive inference, sustain a cost finding of $1.34 per acre. The scope of review, however, does not include factual determinations. Its purpose is served if error is found in findings as made, and remand for correction of such errors is the limit of the judicial power.

Prior to and during the years here involved, the petitioner owned depreciable assets. Conceiving their useful life to be sixteen and two-thirds years, it claimed in its return of net income for each year losses due to obsolescence equal to 6 per cent. of cost or 1913 value. Losses thus sustained are permitted to be deducted under the applicable sections of the Revenue Acts, including section 12 of the Revenue Act of 1916 (39 Stat. 767), and section 234 (a) (7) of the Revenue Acts of 1918, 1921, and 1924 (40 Stat. 1077, 42 Stat. 254, 43 Stat. 283). It was, however, the respondent's contention, sustained by the Board, that assets of the character involved are never wholly consumed, but retain salvage value at the end of any depreciation period equal to 10 per cent. of cost. He therefore applied a composite depreciation rate of 6 per cent. per annum to March 1, 1913, value, and to cost of subsequent additions, after first deducting 10 per cent. of such value or cost. Though actual depreciation

in a given year is not usually capable of proof, it may, with reasonable accuracy be determined upon estimate of expected useful life drawn from experience. Likewise may the existence and amount of ultimate salvage value also be determined. The only question involved, therefore, is whether the composite depreciation rate was under all circumstances a reasonable rate, and we are unable upon this record to say as a matter of law that it was not. Findings of this character must rest in the sound discretion of the Commissioner and the Board of Tax Appeals, who are regarded as experts with extensive knowledge of all factors involved. Tracy v. Commissioner, 53 F.(2d) 575, 579 (C.C.A. 6).

In computing invested capital, however, for purposes of assessing excess profits taxes, the respondent and the Board applied not the composite depreciation rate, but a straight depreciation rate of 6 per cent. per annum. They deducted from cost, or 1913 value of assets, 6 per cent. for each year of useful life without allowance for salvage. The explanation of this seeming · paradox to be found in the Board's memorandum is that "No evidence is introduced relative to this issue." As already indicated, depreciation formulæ are drawn not from evidence in individual cases, but are developed by expert judgment from wide experience. It is difficult to understand how the respondent and the Board could arrive at one depreciation rate when it measured losses deductible from gross income and at another rate when it bore upon the amount of invested capital, since the same property for the same tax year was involved. Of course, it must be understood that in the one case the composite rate increased taxes and in the other it would have lowered them, but arbitrary findings are repugnant to the law and consistency is expected even from experts. The contention that the petitioner has already received the benefit of a 10 per cent. salvage value during the profits tax years, and that this follows from the fact that its sustained depreciation for invested capital purposes has been computed at the rate of 6 per cent. per annum upon 90 per cent. of cost, is not at all clear to us, and the authorities cited, McLaughlin v. Pacific Lumber Co., 293 U.S. 351, 55 S.Ct. 219, 79 L.Ed. 423, Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367, Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127, shed no light upon it.

Moreover, the regulations (Article 232 of Regulation 45, promulgated under the Revenue Act of 1918, Article 232 of Regulation 62 under the Act of 1921, and Article 234 of Regulation 65 under the Act of 1924) all provide that in no case may charges for depreciation be based on a rate which will extinguish the cost value of the property prior to the determination of its useful life, and that nothing therein contained shall be interpreted to mean that the value of a timber plant and equipment may be reduced by depreciation deductions to a sum below the value of the salvage when the plant and equipment shall become obsolete, worn out, or abandoned. These regulations have the force and effect of law, and are controlling upon the Board.

Finding error, both in the determination of land cost and in the depreciation rate as factors in the computation of invested capital, the decisions of the Board are in respect to matters here discussed set aside, and since errors are not to be here corrected, Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623, Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343, the cause is remanded to the Board of Tax Appeals for further proceedings consistent herewith.