**FEDERAL COKE CORPORATION v. DRISCOLL, Collector of Internal Revenue.**

**SAME v. UNITED STATES.**

Nos. 8860, 8861.

District Court, W. D. Pennsylvania.

March 27, 1939.

Reed, Smith, Shaw & McClay, W. A. Seifert, W. W. Booth, and Jos. G. Robinson, all of Pittsburgh, Pa., for plaintiff.

James W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe, Jas. P. Garland, and Courtnay Hamilton, Sp. Assts. to Atty. Gen., Chas. F. Uhl, U. S. Atty., and Orris Bennett, Sp. Asst. U. S. Atty., both of Pittsburgh, Pa., for defendants.

SCHOONMAKER, District Judge.

These two suits were tried together. They are actions by plaintiff, as successor and transferee of the Republic Connellsville Coke Company, to recover capital-stock taxes imposed upon that company under section 701 of the Revenue Act of 1934, Tit. 26 U.S.C.A. § 1358; Section 105 of the Revenue Act of 1935, and Section 401 of the Revenue Act of 1936, 26 U.S. C.A. § 1358a; because it is alleged that the company was not doing or carrying on business during the period from July 1, 1933, to June 30, 1936. Timely and proper refund claims were filed and rejected by the Commissioner of Internal Revenue, and these suits were instituted within the time prescribed by law.

The sole question involved is whether or not the plaintiff was carrying on or doing business within the meaning of the applicable taxing statutes.

These statutes impose upon every domestic corporation, with respect to car-

rying on or doing business, a yearly excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock, and provide that the tax shall not apply, if the corporation did not carry on or do business during any part of the taxable period.

The facts relating to the activities of plaintiff appear in our findings of fact filed herewith. They may be briefly summarized as follows:

The Republic Connellsville Coke Company (plaintiff's predecessor corporation and hereinafter referred to as "Republic") was a Pennsylvania coal-mining corporation. It owned coal-mining properties and coke plants with necessary accessories for the mining and selling of coal and coke. These Republic properties were leased on March 1, 1909, to H. C. Frick Coke Company (hereinafter referred to as "Frick") by two written agreements. By one agreement Frick was to operate the mines and coke plants, and pay Republic as rental the net income received from the operation, after payment of all expenses of operation and taxes. If the operation resulted in a deficit, Republic agreed to reimburse Frick for the amount of such deficit. Frick was to make all necessary repairs, additions, construction to or on the properties, as authorized from time to time by Republic, and the cost thereof was to be charged to Republic by Frick and settled for quarterly. The second agreement was of like tenor, except as to rentals which were fixed as stated royalty on coal mined from lands covered by that agreement.

During the taxing period involved in this suit, the mining properties of Republic were operated by Frick; and incomes and rentals were paid by Frick to Republic thereunder.

Within the period involved in this case, Republic carried on its books, records of moneys kept on deposit-account with the United States Steel Corporation in two accounts,—one, a "clearance account," and two, a "depletion fund deposit account" in which the balances were constantly changing by deposits and withdrawals, and ranged from approximately $300,000 as a minimum to more than $1,000,000 as a maximum. The Steel Corporation paid current bank-rate interest to Republic on these deposit-account balances. Large amounts of equipment were installed by Frick with the approval of Republic, and paid for by Republic. During this period, Republic sold various pieces of land, executed deeds

therefor, and collected the purchase-price. The minute-book record of Republic shows that stockholders and directors held meetings within this period at the office of Republic in the Frick Building Annex, Pittsburgh, Pennsylvania; that employees charged with custody of cash were bonded; that Republic reimbursed the United States Coal & Coke Company for payment of salaries of Republic then amounting to $60 monthly; that directors were paid for attending directors' meetings.

On these facts, we arrive at the conclusion that so far as concerns the operation of the mining properties, the Republic did not cease to do business within the meaning of the taxing statutes when it leased its properties to Frick; but, on the contrary, it carried on its business for which it was chartered, through the agency of Frick as its operating agent, and received the profits and assumed the losses of that operation. Its stockholders and directors met and transacted business; authorized the purchase of equipment for the mining properties operated by Frick, the cost of which was charged to the account of Republic; authorized expenditures for protection of its mining properties.

In addition to that, Republic carried on business in that it held stockholders' and directors' meetings; maintained an office in the Frick Annex Building in Pittsburgh; bonded its employees charged with handling cash; authorized and paid dividends; authorized and approved the sale of lands and the execution and delivery of deeds therefor; collected rentals from a lease; paid rentals on other leases and equipment; reimbursed the United States Coal & Coke Company for monthly payment of salaries of officers of Frick; maintained a large deposit-account with the United States Steel Corporation, and received interest thereof; and declared and paid dividends on its capital stock.

The legal principles involved in our conclusion are quite fully stated in a similar case, i. e., Harmar Coal Co. v. Heiner, D. C., 26 F.2d 729, affirmed 3 Cir., 34 F.2d 725, certiorari denied, 280 U.S. 610, 50 S.Ct. 159, 74 L.Ed. 653, and need not be repeated here. Similar rulings have also been made in Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 52 F.2d 55; Roney v. Commissioner, 4 Cir., 67 F.2d 165; New Haven Securities Co. v. Bitgood, 2 Cir., 87 F.2d 759; United States v. Atlantic Coast Line Co., 4 Cir., 99 F.2d 6,

certiorari denied February 29, 1939, 59 S. Ct. 584, 83 L.Ed. ——.

We therefore hold that plaintiff did business during the period in question in these suits, and was liable for the tax assessed.

Judgment may be entered for defendant in each case. Orders may be submitted accordingly.