## CARNEGIE–ILLINOIS STEEL CORPORATION v. UNITED STATES.
### No. 8845.

District Court, W. D. Pennsylvania.
March 27, 1939.

Reed, Smith, Shaw & McClay, W. A. Seifert, W. W. Booth, and Jos. G. Robinson, all of Pittsburgh, Pa., for plaintiff.

C. F. Uhl, U. S. Atty., and Orris Bennett, Asst. U. S. Atty., both of Pittsburgh, Pa., Jas. W. Morris, Asst. Atty. Gen., and Andrew D. Sharpe, Jas. P. Garland, and Courtney C. Hamilton, Sp. Assts. to Atty. Gen.

SCHOONMAKER, District Judge.

This is an action by the plaintiff to recover capital-stock taxes imposed upon the Sharon Tin Plate Company, predecessor corporation of the Carnegie-Illinois Steel Corporation, the present plaintiff in this case. The taxes imposed were levied under Section 701 of the Revenue Act of 1934, Title 26 U.S.C.A. § 1358, and Section 105 of the Revenue Act of 1935, 49 Stat. 1017.

The basis on which the plaintiff is seeking to recover is that the Sharon Tin Plate Company was not doing or carrying on business during the years 1934 and 1935. Timely and proper refund claims were filed with and rejected by the Commissioner of Internal Revenue; and this suit was instituted within the time prescribed by law.

The sole question involved is whether or not the Sharon Tin Plate Company was carrying on or doing business within this period within the meaning of the applicable taxing statutes. The 1934 statute imposes on every domestic corporation, with respect to carrying on or doing business, a yearly tax of $1 for each $1,000 of the adjusted declared value of its capital stock, and provides that the tax shall not apply, if the corporation did not carry on or do business within any part of the taxable year.

The taxpayer in this case, the Sharon Tin Plate Company, was at all times concerned in this suit a Pennsylvania corporation, with its principal place of business at Pittsburgh, Pennsylvania. Its assets had a book value in excess of $5,000,000, which consisted primarily of real estate and plant-equipment, and accumulated earnings on certain stock. During the taxing period, the stockholders of that corporation held two meetings, at which, among other things, all purchases, acts, proceedings, elections and appointments by the officers and board of directors not previously confirmed, were ratified and approved. During this period, six meetings of the board of directors of the taxpayer were held, at which certain changes in the books of account were authorized, a director was elected, and the sales of stock were ratified. Substantial dividends were declared through the taxable periods, and considerable earnings were accumulated.

The plant and equipment of the Sharon Tin Plate Company were during this period operated by the American Tin Plate Company under an agreement executed March 1, 1903, by which the Sharon Tin Plate Company received a net income from the operation, and agreed to pay any deficit which might be incurred, and for any improvements to the plant or equipment authorized by it. The American Tin Plate Company furnished to the taxpayer detailed

monthly reports of operations of the property. The officers and directors of the two corporations were the same, and the salaries of these individuals were paid in part by the American Tin Plate Company from the gross earnings of the plant belonging to the Sharon Tin Plate Company.

Our conclusion is that during the taxing period, the Sharon Tin Plate Company was doing business for profit, and did individually during the taxing period receive profits from the operation of this plant. The Sharon Tin Plate Company was at all times aware of the activities of the operating company, the management of the plant, and the sale of its products, not only because of the monthly reports submitted, but also by reason of the fact that the officers and directors of both companies were the same individuals. We consider the lease-agreement to be a mere operating agreement, and the agency through which the Sharon Tin Plate Company carried on the business for which it was charged. Therefore, the Sharon Tin Plate Company was liable for the tax imposed and paid, and not legally entitled to recover in this case.

The legal principles involved in our conclusion are quite fully stated in Harmar Coal Co. v. Heiner, D.C., 26 F.2d 729, Id., 3 Cir., 34 F.2d 725, certiorari denied 280 U.S. 610, 50 S.Ct. 159, 74 L.Ed. 653. See also our opinion this day filed in two suits by the Federal Coke Corporation v. Driscoll, Federal Coke Corporation v. U. S., 27 F.Supp. 224.

Findings of fact and conclusions of law in accordance with this memorandum are filed herewith. Judgment may be entered for the defendant in this case. An order may be submitted accordingly.