## UNITED STATES v. PEABODY CO.
### No. 7833.

Circuit Court of Appeals, Sixth Circuit.

May 6, 1939.

As Amended June 9, 1939.

L. W. Post, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., and William McClanahan and C. P. J. Mooney, both of Memphis, Tenn., on the brief), for the United States.

John B. Snowden, II, of Memphis, Tenn. (John B. Snowden, II, Allan Davis, and Armstrong, McCadden, Allen, Braden & Goodman, all of Memphis, Tenn., on the brief), for appellee.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment for $926 with interest in favor of the taxpayer in a suit for refund of payment of a capital stock tax for the fiscal year ending June 30, 1935. The case was tried to the court upon a written stipulation of fact together with certain oral evidence submitted in open court. The sole question is whether the taxpayer was doing business during the taxable year within the provisions of § 701 of the Revenue Act of 1934, 48 Stat. 680, 769, c. 277, 26 U.S.C.A. § 1358 (a), (c) (3) which reads as follows:

"(a) For each year ending June 30, beginning with the year ending June 30, 1934, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock.

 \*     \*     \*     \*     \*     \*

"(c) The taxes imposed by this section shall not apply—

 \*     \*     \*     \*     \*     \*

"(3) to any domestic corporation in respect of the year ending June 30, 1934, if it did not carry on or do business during a part of the period from the date of the enactment of this Act [May 10, 1934] to June 30, 1934, both dates inclusive. \* \* \*"

Appellee is a Tennessee corporation, the stock of which is owned by members of one family, organized for the purpose of "purchasing, owning, improving, using, occupying, renting, leasing, enjoying and conveying real estate not exceeding in amount and size a lot or parcel of ground four hundred feet square." Its principal assets are two parcels of real property in the business district of Memphis, Tennessee, upon which appellee erected a large

department store and a warehouse. Both of these buildings appellee leased to a corporation which operates a department store. In the lease the lessee assumed payment of taxes, agreed to repair, and to maintain the usual insurance.

The company had no separate office, its books being kept in the office of the president's private business, and one bookkeeper was regularly employed. During the taxable period the company was a going concern.

When appellee was incorporated it had a paid-in surplus of about $1,600,000. This surplus was increased by earnings which were not distributed, so that on June 30, 1934, the surplus was about $2,100,000. It was over this amount on June 30, 1935.

A sinking fund of $100,000 was created out of the rents received to protect the company from maintenance charges in case of possible vacancy. During the time from 1930 to March 26, 1935, appellee used the sinking fund in the purchase and sale of securities as follows:

### PURCHASES

1930
July 8 30 M Miss. Joint Stock Land Bank at 91...................... $27,300.00
1932
May 2 30 M State of Tennessee at 102.4828 ........................ $30,744.83
Nov. 15 20 M Miss. Joint Stock Land Bank at 47 ..................... $ 9,400.00

Total ..................... $67,444.83

### SALES

1935
March 20 30 M State of Tennessee at 119.375 $35,812.50
22 15 M Miss. Joint Stock Land Bank at 98 ..................... $14,700.00
26 35 M Miss. Joint Stock Land Bank at 98 ..................... $34,300.00

Total ..................... $84,812.50

Under the applicable law the taxes against appellee's land and buildings for the calendar year 1935 were subject to a discount of one and one-half per cent. if paid on or before June 10, 1935. Appellee paid these taxes out of its own funds, as the tenant was unable to pay them in time to avail itself of the discount, and was later reimbursed by the tenant for the full amount of the assessment.

The Government contends that the taxpayer accumulated a substantial reserve and invested it in securities which were sold at a profit during the taxable year; that by paying city taxes at a discount, the taxpayer realized a profit when the lessee, who was obligated to pay the taxes, paid the full amount assessed to the taxpayer, and that hence it was doing business within the meaning of the statute.

We think that the contention with reference to the payment of city taxes has no merit. The payment of these taxes discharged an obligation for which appellee was primarily liable through its ownership of the land and is not "doing business" within the meaning of the statute.

The fact that appellee bought and sold securities, securing a profit therefrom, raises a different question. The finding of the court is conclusive upon questions of fact if supported by substantial evidence, but as we conceive it, this record presents a question of law, namely, what constitutes doing business within the purview of the statute as interpreted by the courts? The Commissioner's determination is presumptively correct. Welch v. Helvering, 290 U. S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. The burden rests upon the taxpayer to prove that it is entitled to exemption from this tax. Cf. Routzahn v. Brown, 6 Cir., 95 F.2d 766; North American Coal Corp. v. Commissioner, 6 Cir., 97 F.2d 325. It must be able to show that its operations fell within the terms of the statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S. Ct. 788, 78 L.Ed. 1348. The applicable test is declared in Von Baumbach v. Sargent Land Co., 242 U.S. 503, 516, 37 S. Ct. 201, 204, 61 L.Ed. 460. The court there emphasized the distinction "between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes." It stated that "no particular amount of business" was necessary to subject a corporation to the tax. Cf. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312. Art. 85, Treas.Reg. 64 (1934 ed.). In Harmar Coal Co. v. Heiner, 3 Cir., 34 F.2d 725, certiorari denied, 280 U.S. 610, 50 S.Ct. 159, 74 L.Ed. 653, the court declared that a corporation organized for a definite though limited purpose involving profits, that pursues activities to carry out that purpose, no matter how few or small they may be, is carry-

ing on or doing business within the meaning of the statute. Within the rule of these decisions, appellee did business during the taxable year. It is a going concern which has built up a large reserve available for profitable enterprise. It maintains its organization for a purpose which involves profits. It bought and sold the stocks because it was "good business." The reason for selling the securities, as stated by the president of the company in directors' meeting, was that "due to the big advance it would be good policy for the Peabody Company to sell these bonds now and reinvest in some safe and liquid bonds at some later date." Indisputably this transaction was for profit. Appellee put forth repeated efforts during the taxable period in the pursuit of profit and gain. As a matter of law this constitutes doing business within the meaning of the statute. Cf. Kales v. Commissioner, 6 Cir., 101 F.2d 35. The cases relied upon to the contrary are distinguishable on the facts. In McCoach v. Minehill & S. H. Ry. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, the company against which the corporation tax was asserted simply received and distributed income. A case which involved activities carried on not for profit, such as Rose, Collector, v. Nunnally Investment Co., 5 Cir., 22 F.2d 102, has no bearing here.

■ Our conclusion that the company was doing business is strengthened by the provisions of the Treasury Regulations with reference to the excise tax (Treas.Reg. 64, 1934 ed.). These regulations, where not inconsistent with or violative of the statute, have the force and effect of law. Cf. Commissioner v. General Machinery Corp., 6 Cir., 95 F.2d 759; Wisconsin Land & Lumber Co. v. Commissioner, 6 Cir., 88 F.2d 151. Appellee's activities came squarely within the following extracts from Articles 32 and 33:

Art. 32. "The words 'carrying on or doing business' must be given their ordinary and natural significance. 'Business' is a very comprehensive term and embraces whatever occupies the time, attention, or labor of men for the purpose of livelihood or profit. * * * Any activities with respect to its properties or business other than such as are necessary to their protection and retention (as paying taxes thereon) will subject the corporation to the tax. * * *"

Art. 33. * * *'

"A corporation organized for the purpose of owning and leasing real estate, which has leased all of the property under its control, may still be engaged in doing business unless, under the terms of its lease, its activities have been reduced to the mere receipt and distribution of the avails of the leases at the actual cost of so doing. If it is maintaining its organization for the purpose of continued effort in the pursuit of profit or gain, it is doing business.

"A corporation owning or managing real estate, which leases all of its property but under the terms of the lease is required to maintain or keep the property in repair, is doing business * * *.

"A corporation engaged in buying and selling securities or other property is doing business, even though for a period it makes no purchases or sale because of unfavorable market conditions * * *."

We cannot conclude that this company is doing only such acts as are necessary to the maintenance of its corporate existence, merely owning and holding property and distributing its avails when it actively deals in securities for the purpose of making a profit.

The judgment is reversed, and the case is remanded for further proceedings in accordance with this opinion.