ARGONAUT CONSOLIDATED MINING CO. v. ANDERSON, Collector of Internal Revenue.

No. 397.

Circuit Court of Appeals, Second Circuit.

July 14, 1931.

Henry M. Hogan, of New York City (Anthony J. Russo, of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is a Maine corporation, whose primary purpose is to hold the shares of the Argonaut Mining Company, which as its name implies, is engaged in the mining of gold, and whose properties are in California. The plaintiff in 1909 purchased fifty-one per cent. of the shares of this company and has held them ever since; upon them it has received dividends, somewhat irregularly, from time to time, which it has used both in the declaration of dividends and for purposes to be mentioned later. A majority of the plaintiff's shares are in turn held by a third corporation, the White Knob Company, which may therefore be regarded as the parent of the other two. For the five years ending June 30, 1922 to 1926, both inclusive, the Commissioner of Internal Revenue assessed against the plaintiff a corporate stock tax whose validity and amount is the subject of this action, the plaintiff having been forced to pay the assessments, which it now sues to recover. The questions at issue are whether the plaintiff was "doing business" within the meaning of the statute (section 1000 (a) of the Revenue Acts of 1918 and 1921 [40 Stat. 1126; 42 Stat. 294]); and if so, what was the value of its capital stock on which the tax should have been calculated. As these are quite separate, it will be convenient to consider them independently.

Just what activities bring a corporation within the statutory definition the decisions, as is almost inevitable, do not certainly declare. That there is a degree of quietude which will exempt it, is indeed well settled [Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill, etc., Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842; U. S. v. Emery, etc., Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; Eaton v. Phoenix Securities Co., 22 F.(2d) 497 (C. C. A. 2); Rose v. Nunnally Co., 22 F.(2d) 102 (C. C. A. 3)]; but how far it may be active and still maintain its exemption, is in the nature of things impossible of statement in general terms. In most of those cases in which the corporation has succeeded its activities have been confined to holding the title of property, whose usufruct it receives and distributes in dividends. When this is the whole scope of its dealings, it does no business within the meaning of the statute.

However, it takes little to bring it from behind this shield. Thus, selling and leasing land, and exploring for ore, were enough in von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; and borrowing money to assist the subsidiary in Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 70 L. Ed. 678. On the other side the investment of its funds in current securities from which income is derived was not enough in McCoach v. Minehill, etc., Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842; The decisions in the lower courts represent so many variants that it is scarcely profitable to consider them; as in so many other matters we have to mark off a zone of increasing impenetrability, rather than to draw a line. On the whole it appears to us that the plaintiff's activities made an independent business.

It did not distribute all its revenue in dividends, but in substantial part invested them in current securities which it bought and sold, with an eye to their prospects of rise or fall. So far McCoach v. Minehill, etc., Co. is so closely akin that, if there had been nothing more, it would be hard to distinguish it.

But several of the enterprises in which it engaged were of quite a different sort. It lent money to the Mojave Tungsten Co., a fruitless speculation; it invested in other mines, the Kennedy and the Sinaloa. It invested in a mining property in Minnesota, not then, or ever since, developed. These can be accounted for only on the assumption that it was looking about for speculative ventures, and not merely seeking the usual financial investments for its surplus funds. The difference appears to us somewhat more real than it did to the learned judge, though doubtless in the end the issue is one of degree. Every one who has any property puts it out at profitable investment, if he can; but if he can learn of its prospects from others and need not give it his continuous supervision, he may go about his other affairs; unless he devotes much time to it he can scarcely be said to be in business. Not so, when he chooses ventures whose possibilities he must learn for himself, which he must follow up and as to which he has no ready means of information. Any substantial concern with such things is pro tanto a business; its amount is immaterial here.

Aside from these, the plaintiff advanced money repeatedly to disburse the taxes of its parent, the White Knob Company, and once, to pay part of the purchase price of a property bought by the mining company, which that company could not raise at once. Moreover, on one or two occasions it attempted to intervene in the policies of the mining company, though apparently without effect. It is true that the dealings we have recited overlapped the period here in suit. That does not matter, if they disclose the general character of the enterprise. Of course it is true that a company may be active at one season and inactive at another, depending upon its choice to engage in, or withdraw from, business, and in such a case only its dealings within the taxable period determine its liability. But the mere fact that activities, which may fairly be taken as characteristic, chance to happen outside the period concerned, is irrelevant. The sum of all these dealings appears to us to carry the corporation outside the class of those inert companies, which can assert that they are mere dry holders of property, and conduits to carry over its profit to the persons eventually entitled.

■ The remaining question is whether the plaintiff proved that the taxes properly assessable against it were less than those which it was forced to pay, and if so, by how much.

Not only has it the burden of proof in general (U. S. v. Anderson, 269 U. S. 422, 443, 46 S. Ct. 131, 70 L. Ed. 347), but it is obvious that without proving the quantum of the illegal exaction there can be no ad damnum. Moreover, the appraisal of a corporation's capital stock under this section is a matter primarily in the discretion of the Commissioner (Ray Consolidated Copper Co. v. U. S., 268 U. S. 374, 377, 45 S. Ct. 526, 69 L. Ed. 1003), on whom the chief, if not the only, demand is that he honestly consider all relevant evidence which can affect the result. For this reason the occasional sales of the mining company's shares upon the San Francisco Stock Exchange were not controlling. In Ray Consolidated Copper Co. v. U. S., the proof of this sort was far more persuasive than that offered here; the sales had been continuous throughout the period, and in very large quantities. They were not enough to control the Commissioner's appraisal, based upon an analysis of the property's value. Whatever we might independently think of the conclusiveness of such evidence, that decision forbids our adopting it as the authoritative measure of the value of the capital stock. Going about the matter as the Commissioner did, the only debatable item of the mining company's assets is the value of the ore body, and the method which he used to appraise this was reasonable; that is, from the tonnage in the ground on March 1, 1913, deduct extraction, and assume that what was left had a value determined by the estimated profit per ton. The figure so reached, since it represents a sum not presently available, must then be corrected to get its present value, by a formula which presupposes exhaustion within an assumed period, and which discounts future installments accordingly. This the Commissioner had done in fixing the taxes of the mining company, and he used the same figures for its shares held by the plaintiff. The propriety of this is challenged, but it is not necessary to pass upon it, because, even though the method were shown to be improper, the plaintiff cannot compel a reassessment. It can recover only an ascertainable sum as proved excess. Such is the predicament of any taxpayer.

■ Its only substantial proof was in the deposition of one, Stent, an official of the mining company. He gave the original tonnage on March 1, 1913, the yearly extraction, and the gross return for each year. He also gave the yearly expense of extraction including incidental construction, but excluding fire and flood damage, a substantial item

in the period in question, but sporadic. We can figure the gross return per ton for each of the five years, based upon that year and the four years before it, and deduct the average cost of extraction reckoned in the same way. The difference is the value per ton of what remained in the ground, based upon the same experience. The result for the several years varies a good deal, but that is natural in view of the differences in cost and in the value of the ore; it need not surprise us. If we multiply the amount left in the ground in each year by the figure so obtained, the result is its value, ignoring the necessary discount. For the years 1920, 1921 and 1922, representing the taxing periods ending June 30, 1922, 1923 and 1924, the figure taken by the Commissioner as the present value of the ore body was about 40% of this amount; it was 42% for 1923, and 60% for 1924. For all the years except the last this is well within any reasonable discount, figured for example on Hoskold's table, if the life of the mine be taken as terminated in 1931, again a reasonable estimate. The last year is a little more doubtful, but even that allows for a rate of interest of about 11%, which cannot be regarded as arbitrarily low, even in such a business as mining. The plaintiff has not proved the proper interest rate for such a business.

In such complicated computations it is not possible to cut more closely. We therefore agree with the District Judge also in his conclusion that the plaintiff as to this feature of the case has failed to show that the valuation was arbitrary.

Judgment affirmed.