**NEW HAVEN SECURITIES CO. v. BITGOOD.**

**No. 192.**

Circuit Court of Appeals, Second Circuit.

Feb. 8, 1937.

Robert H. Jackson, Asst. Atty. Gen., J. Louis Monarch and Arthur P. Curran, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for appellant.

Curtiss K. Thompson, of New Haven, Conn. (John H. Weir, of New Haven, Conn., of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The appellee, a Connecticut corporation, with an original nominal capital stock of $2,000, was organized by the Security Insurance Company of New Haven, which owns all its shares of stock, excepting directors' qualifying shares. Its charter conferred broad powers. The main reason for its organization in 1920 was to hold capital stock of other insurance companies as assets; primarily it was organized to take over stock of the First Reinsurance Company, a subsidiary of the Security Insurance Company. Its capital stock was increased from time to time for the purpose of acquiring the capital stock of other insurance companies. In exchange for the shares issued to the Security Insurance Company, the corporation received the funds which enabled it to acquire securities of other companies. The officers were elected annually; books of account were kept; and there were regular meetings of the board of directors and business transactions were recorded. The appellee is not in liquidation and has continued its corporate organization. The minutes reveal that the company bought and sold securities as well as other property and authorized the negotiation of loans to assist agencies of the Security Insurance Company. At a meeting of the board February 6, 1933, its executive officers were authorized until January, 1934, to borrow funds at their discretion not to exceed $25,000, to give notes of

the company, and to use as collateral for such loans any security owned by the company. The appellee's officers were also officers of the various insurance companies whose stock it held. It never had any employees to whom compensation was paid and it kept its records and books in the office of the Security Insurance Company. Its income was derived entirely from the ownership of property and its holdings of stock. The appellee, moreover, served the convenience of the Security Insurance Company by acquiring and holding, in addition to the stock of subsidiaries of the Security Insurance Company, certain other securities, some for investment purposes and others to relieve the portfolio of the Security Insurance Company or one of its subsidiaries of undesirable investments. Real estate was acquired for the accommodation of a subsidiary. Moreover, the appellee gave its guaranty on an obligation of the Security Insurance Company and discharged it in cash received from dividends and loans.

The appellee duly filed a claim June 30, 1933, for exemption from the capital stock tax imposed by section 215 of the National Industrial Recovery Act (48 Stat. 195, 207), upon the ground that it did not carry on or do business during the period between June 16, 1933, to June 30, 1933, and on September 29, 1933, it filed a capital stock tax return and claimed exemption. The Commissioner denied the appellee's claim for exemption and assessed against it a capital stock tax for the year ending June 30, 1933, with interest. The appellee paid the tax. A claim for refund was rejected and this suit followed.

■ The capital stock tax is an excise tax imposed upon corporations engaged in business activities and enjoying advantages inherent in corporate organization. Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. The question presented is whether the appellee was carrying on business within the meaning of the corporate tax provisions of section 215 of the National Industrial Recovery Act, and our inquiry is whether the finding of fact that the appellee was not carrying on business during the taxable year ending June 30, 1933, is based upon evidence to be found in this record. The Commissioner's determination against the appellee required it to bear the burden of proof establishing the facts which entitled it to exemption from the tax. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.

Ct. 129, 73 L.Ed. 379; Reinecke v. Spalding, 280 U.S. 227, 50 S.Ct. 96, 74 L.Ed. 385; Argonaut Consolidated Mining Co. v. Anderson, 52 F.(2d) 55 (C.C.A.2), certiorari denied 284 U.S. 682, 52 S.Ct. 200, 76 L.Ed. 576.

■ If the privileges incident to corporate organization are possessed and exercised, the precise extent of their exercise is not important. See, Von Baumbach v. Sargent Land Co., 242 U.S. 503, 517, 37 S.Ct. 201, 61 L.Ed. 460. A corporation which does business during part of the taxable year is subject to the capital stock tax. Blalock v. Georgia Ry. & Elec. Co., 228 F. 296, Ann.Cas.1917A, 679 (C.C.A.5). In Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 346, 70 L.Ed. 678, a corporation was organized for the purpose of borrowing money through the issuance of bonds to assist a subsidiary. It maintained an office, voted the stock of the subsidiary, elected directors, loaned part of the proceeds of the bonds on call loans, and collected interest. It was held to be doing business within the capital stock provisions of the Revenue Acts of 1916 and 1919 (39 Stat. 756; 40 Stat. 1057). The court said: "The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit."

■ This appellee was organized for profit. It was capable of paying dividends to its stockholders. The fact that the transactions over a period of time do not show a profit is immaterial. Profits from its organization could result to its principal stockholder, Security Insurance Co., in other ways than through dividends, Houston Belt Co. v. United States, 250 F. 1 (C.C.A.5). Indeed, there were numerous economic benefits inuring to the stockholder. The Security Insurance Company organized the appellee to enable itself and its subsidiaries to operate more freely under the insurance laws of New York state while holding stock in other insurance companies. As stated in the Chile Copper Co. Case: "If the one business could not be carried on without two corporations taking part in it, each must pay, by the plain words of the Act."

In Phillips v. International Salt Co., 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323, reversing 9 F.(2d) 389 (C.C.A.3), it was decreed sufficient to be engaged in business that the corporation maintained its

corporate form to conduct activities which were substantially those of a holding company, controlling the stock of subsidiaries, and occasionally indorsing notes for their benefit. See, also, Harmar Coal Co. v. Heiner, 34 F.(2d) 725 (C.C.A.3), certiorari denied 280 U.S. 610, 50 S.Ct. 159, 74 L. Ed. 653. In Argonaut Consolidated Mining Co. v. Anderson, 52 F.(2d) 55 (C.C.A. 2), certiorari denied 284 U.S. 682, 52 S.Ct. 200, 76 L.Ed. 576, the majority of the taxpayer's shares were owned by another company. It was loaning and investing money for speculative purposes; also advanced money to the parent company for the payment of taxes. On one occasion it advanced funds to pay part of the purchase price of property bought by a mining company, the majority of whose stock it held. We held that these dealings constituted the doing of business and that the taxpayer was not a mere "dry holder" of property or conduit between its parent and the company whose majority stock it held.

In Rose v. Nunnally Inv. Co., 22 F. (2d) 102 (C.C.A.5), certiorari denied 276 U.S. 628, 48 S.Ct. 321, 72 L.Ed. 739, and Eaton v. Phoenix Securities Co., 22 F.(2d) 497 (C.C.A.2), there was that degree of inertness which exempted the corporations from imposition of the capital stock tax. In the Eaton Case, substantially all that was done by the company during the disputed period was to increase its holdings in subsidiaries by the purchase or increase of capital stock. It received dividends upon the shares it owned and declared dividends out of the proceeds. We held on the stipulated facts that the corporation was not doing business.

McCoach v. Minehill Ry. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, is to be distinguished from the instant case by the fact that the corporation had retired from the business for which it was organized and was engaged merely in the ownership of property as lessor, in the distribution of the avails from leases, and in the receipt of interest and dividends from invested funds.

Here the taxpayer continued actively in the business for which it was organized. It had not withdrawn at any time; nor may it claim exemption as an inactive corporation doing no more than liquidating its assets. The dominant purpose of holding the stock of other insurance companies was to facilitate the operations of its principal shareholder. It acquired certain other securities some for investment purposes and others to relieve the portfolio of the Se-

curity Insurance Company or one of its subsidiaries of undesirable investments. It received rentals from property it held as an accommodation to its principal shareholder. It took notes of certain agencies of the Security Insurance Company. In one instance as an accommodation it gave its guaranty upon the obligation of the Security Insurance Co. on an assessment of its stock in a bank and later discharged it. Underlying these facts is the important practical consideration that the corporate form was adopted and corporate privileges were exercised to accomplish ends of considerable value and benefit to the taxpayer's principal stockholder. The capital stock tax was meant to embrace this enjoyment of corporate advantages. The appellee's activities constituted doing business within the taxing statute.

Judgment reversed.