## HASTINGS PAVEMENT CO. v. HOEY, Collector of Internal Revenue.

District Court, S. D. New York.

July 24, 1939.

Wood, Molloy & France, of New York City (Melville J. France, of New York City, of counsel), for plaintiff.

Gregory F. Noonan, U. S. Atty., of New York City (Noel Hemmendinger, Asst. U. S. Atty., of New York City, of counsel), for defendant.

COXE, District Judge.

This is a suit to recover capital stock taxes alleged to have been erroneously assessed against Central Supply Company, the predecessor of the plaintiff, for the taxable years 1936 and 1937. The taxes were assessed under the Revenue Act of 1935, § 105, as amended by the Revenue Act of 1936, § 401, 26 U.S.C.A. § 1358a. They were paid under protest, and claims for refund were thereafter rejected. The facts have all been stipulated, and both parties have moved for summary judgment.

The sole question for determination is whether Central Supply Company was "carrying on or doing business" in either of the two years for which the respective assessments were made.

Central Supply Company was organized in Maine in 1907 for the purpose of purchasing and holding the stocks of companies engaged in the asphalt block industry; it thereafter acquired a controlling interest in a number of such companies. At the beginning of the taxable year 1936, the company owned, directly or indirectly, substantially all of the outstanding stock of International Pavement Company, Hastings Pavement Company, Harlem Contracting Company, Asphalt Block Pavement Company and Atlantic Asphalt Block Pavement Co. Inc. During the taxable year 1936, various intercompany transactions took place, which were designed to improve the financial position of the different companies comprising the group.

In the first of these transactions, Hastings Pavement Company, one of the subsidiaries, transferred certain of its assets to Central Supply Company, the parent corporation, in the form of dividends; this transfer included among other things 2,450 shares of preferred stock of Asphalt Block Pavement Company, and an indebtedness of the same company to Hastings Pavement Company, amounting to $247,153.28.

The next transaction had to do with a plan of reorganization of Asphalt Block Pavement Company, which was considered and authorized at a meeting of the di-

rectors of Central Supply Company held on Dec. 27, 1935, and later put into effect. Under this plan, Central Supply Company surrendered to Asphalt Block Pavement Company the shares of stock and cancelled the indebtedness of that company, which Central Supply Company had previously acquired from Hastings Pavement Company, receiving in return therefor new common stock of Asphalt Block Pavement Company.

The last transaction concerned International Pavement Company, also a subsidiary. This, too, was considered and authorized at the directors' meeting of Central Supply Company held on Dec. 27, 1935. By this transaction, Central Supply Company used a portion of the new common stock of Asphalt Block Pavement Company, which it had received from that Company, to effect a cancellation of an indebtedness of $126,350.85 owed by Asphalt Block Pavement Company to International Pavement Company.

During the taxable year 1936, Central Supply Company paid a salary of $6,750 to its president, and also made some miscellaneous payments to maintain its corporate existence. It received in the same year from Hastings Pavement Company cash dividends and advances of $4,874.40.

By the beginning of the taxable year 1937, the various intercompany adjustments, above described, had been fully completed, and the only important transaction during the year was the consolidation of Harlem Contracting Company and Atlantic Asphalt Block Co., Inc., two of the subsidiaries, under the name Harlem Contracting Company, Inc. This consolidation was considered and authorized at a directors' meeting of Central Supply Company held Dec. 24, 1936. In the consolidation, Central Supply Company received 30% of the stock of the consolidated company, and International Pavement Company 70%.

During the taxable year 1937, Central Supply Company received cash dividends from Hastings Pavement Company of $10,000; it also obtained a loan of $3,000 from the same company, which was later repaid. The disbursements included a salary to the president of $9,250, and various small payments for corporate purposes.

 It will serve no useful purpose to review the many cases dealing with the much vexed question presented by this suit; they all require a showing of inertness or passivity to sustain a claim of exemption from tax. If the "activities included something more than the mere holding of property and the distribution of the receipts thereof", the corporation is subject to tax. Von Baumbach v. Sargent Land Co., 242 U.S. 503, 514, 516, 37 S.Ct. 201, 204, 61 L.Ed. 460. This has been emphasized in the more recent cases. Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678; Phillips v. International Salt Co., 274 U.S. 718, 719, 47 S.Ct. 589, 71 L.Ed. 1323, reversing per curiam, 3 Cir., 9 F.2d 389; Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 52 F.2d 55, certiorari denied 284 U.S. 682, 52 S.Ct. 200, 76 L.Ed. 576; New Haven Securities Co. v. Bitgood, 2 Cir., 87 F.2d 759. In the Chile Copper case, the exemption was denied because, as stated by Mr. Justice Holmes, "the plaintiff was a good deal more than a mere conduit for the Chile Exploration Company. It was its brain or at least the efferent nerve without which that company could not move." [270 U.S. 452, 46 S.Ct. 346.]

 In the present case, the Central Supply Company was "a good deal more than a mere conduit" for its subsidiaries; it not only had a controlling voice in the affairs of the subsidiaries, but a guiding hand in their activities. This is clearly indicated by the minutes of the directors' meetings held on Dec. 27, 1935, and Dec. 24, 1936. At the first of these meetings, "the capital and financial structure of the Asphalt Block Pavement Company" was considered, and a plan of reorganization was authorized. This plan was later fully consummated. The second meeting was devoted to a consideration of a proposal to consolidated Harlem Contracting Company and Atlantic Asphalt Block Company, Inc., and action was taken to put the consolidation into effect. These were affirmative acts by the parent corporation in the interest of the entire group of companies; they were "something more than the mere holding of property and the distribution of the receipts thereof". The Central Supply Company was in effect determining and directing the financial affairs of its various subsidiaries. I think that this amounted to "carrying on or doing business" in each of the taxable years 1936 and 1937.

The motion of the plaintiff for summary judgment is denied, and the similar motion of the defendant granted.