### GENERAL RIBBON MILLS, Inc., v. HIGGINS, Collector of Internal Revenue.

District Court, S. D. New York.
Jan. 16, 1940.

Epstein & Brothers, of New York City, for plaintiff.

John T. Cahill, U. S. Atty., of New York City (Dolores C. Faconti, Asst. U. S. Atty., of New York City, of counsel), for defendant.

LEIBELL, District Judge.

The defendant, Collector of Internal Revenue, moves for summary judgment, Rule 56(b), Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c, upon the complaint and answer and an agreed statement of facts to which are attached four exhibits. Plaintiff has made a cross motion for summary judgment under subdivision (a) of the rule.

Plaintiff corporation was assessed $1,868.90 as a capital stock tax, on the ground that it was "carrying on or doing business" for part of the year ending June 30, 1937. Section 105 of the Revenue Act of 1935, as amended by Section 401 of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Code, § 1200(a). Plaintiff paid the tax under protest, filed a claim for a refund and when that was rejected brought this action under 26 U.S.C.A.Int.Rev.Code, § 3772, to recover the amount of the tax with interest. Plaintiff was organized under the Laws of the State of Delaware on May 13, 1937 and contends that it was not carrying on or doing business during the period between May 13, 1937 and June 30, 1937, in fact not until August 31, 1937. That presents the sole question on this motion.

It appears from plaintiff's charter that among the purposes for which plaintiff was organized are the following:

"2. To purchase or otherwise acquire all or any part of the business, good will, rights, property and assets of all kinds and assume all or any part of the liabilities of any corporation, association, partnership or person engaged in any business included in the foregoing purposes and objects, or incidental thereto.

"3. To buy, sell, manufacture, work, prepare, treat and in all ways handle and deal in silk, wool and other textile fabrics of all kinds, and the cotton, linen, silk, wool and other threads and raw materials entering into the composition of textile fabrics of all kinds.

\* \* \* \* \* \*

"10. To acquire by purchase, subscription or otherwise, and to hold for investment or otherwise and to use, sell, assign, transfer, mortgage, pledge or otherwise deal with or dispose of stocks, bonds or any other obligations or securities of any corporation or corporations; to merge or consolidate with any corporation in such manner as may be permitted by law; to aid in any manner any corporation whose stocks, bonds or other obligations are held or in any manner guaranteed by this corporation or in which this corporation is in any way interested; and to do any other acts or things for the preservation, protection, improvement or enhancement of the value of any such stock, bonds or other obligations, or to do any acts or things designed for any such purpose; and while owner of any such stock, bonds or other obligations to exercise all the rights, powers and privileges of ownership thereof, and to exercise any and all voting powers thereon; to guarantee the payment of dividends upon any stock, or the principal or interest or both, of any bonds or other obligations, and the performance of any contracts."

The first meeting of the incorporators was held on May 13, 1937, at which a code of by-laws was adopted, directors were elected for the ensuing year, and a resolution was adopted authorizing the directors to issue the shares of capital stock for cash, services, property or for any consideration permitted by law.

A meeting of the board of directors followed immediately, at which officers were elected and the corporate seal, stock certificate, stock record books and the by-laws were approved. It was also resolved that the principal office of the corporation be "established and maintained at the office of the United States Corporation Company" in the City of Dover, and that the officers of the corporation be authorized and directed to make such corporate reports as were required by law and to appoint such agents or attorneys in connection therewith as might be required by law.

There was then presented to the meeting of the board an offer from certain individuals, three of whom were officers of this corporation, "to transfer to this company 1,730 shares of common stock of General Ribbon Mills Inc., Pa. in exchange for common stock of General Ribbon Mills Inc., Del. at the ratio of one share of common stock of the Pennsylvania corporation for two shares of common stock of the

Delaware corporation." The offer was accepted and the officers of this corporation were authorized to make the exchange of stock pursuant to the offer. The meeting then adjourned for a short time, the exchange of stock was made and the meeting then reconvened. The secretary reported "that there had been transferred to this company upwards of 80% of the issued and outstanding shares of common capital stock of General Ribbon Mills Inc., Pa." The following resolutions were then adopted by the board of directors of this corporation:

"Resolved, that it is to the best interests of this company to directly operate the business now being conducted by General Ribbon Mills Inc., Pa., and it is therefore recommended that there be a complete liquidation and dissolution of General Ribbon Mills Inc.

"Resolved, that it be further recommended that upon such liquidating and dissolution of General Ribbon Mills Inc., Pa., all of its net assets be distributed to its stockholders in complete cancellation and redemption of all of its issued outstanding common capital stock. That to facilitate such distribution, General Ribbon Mills Inc., Del. does consent that the remaining stockholders of General Ribbon Mills Inc., Pa. may receive the sum of $333.33 per share as their pro rata share of the complete liquidation upon the shares of stock of General Ribbon Mills Inc., Pa. held by such remaining stockholders, and General Ribbon Mills Inc., Del. does hereby offer and agree to accept for itself all the rest, residue and remainder of the assets of General Ribbon Mills Inc. of every kind, nature and description, subject to all of the present liabilities of General Ribbon Mills Inc., Pa., as its prorata share of such complete liquidation.

"Further resolved, that the foregoing recommendations be transmitted by proper officers of this company to the General Ribbon Mills Inc., Pa. and that upon any special meeting of stockholders of General Ribbon Mills Inc., Pa. the stock in that corporation owned by the General Ribbon Mills Inc., Del. shall be voted to carry out and give effect to the foregoing recommendations."

Annexed to the agreed statement of facts is an affidavit of the secretary and vice-president of plaintiff in which he states that plaintiff commenced "doing business" on August 31, 1937, at which time it acquired the net assets of General Ribbon Mills, Inc. (the Pennsylvania corporation); that "there were no receipts or disbursements for the period from May 13, 1937 to June 30, 1937" and that the assets of plaintiff on June 30th consisted of the stock in the Pennsylvania corporation valued at $346,000 against which there was outstanding capital stock of plaintiff to the extent of $346,000. There is no dispute as to the amount of the tax.

The agreed statement of facts, after stipulating as to the minutes of the meeting of the incorporators and the meeting of the directors held on May 13, 1937, summarized above, states:

"5. The plaintiff performed no other acts of any kind, nature or description until August 31, 1937 on which date it received, among other things, as a liquidating dividend, the manufacturing plant of the General Ribbon Mills, Inc., Pennsylvania, and the entire physical assets of the General Ribbon Mills, Inc., Pennsylvania, whereupon from and as of August 31, 1937, the plaintiff undertook the business of manufacturing and selling ribbons, which was theretofore conducted by the General Ribbon Mills, Inc., Pennsylvania, and the plaintiff employed in connection with such business the said assets so received by it from the General Ribbon Mills, Inc., Pennsylvania.

"6. The acquisition of the manufacturing plant and the entire physical assets of the General Ribbon Mills, Inc., as set forth in Paragraph 5 herein, was a necessary preliminary to the transaction by the plaintiff of its present business, namely, the manufacturing and selling of ribbons."

I am of the opinion that the plaintiff corporation was not "carrying on or doing business" between May 13, 1937, the date of its organization, and June 30, 1937, the end of the tax period in question. The only acts on which defendant bases its claim that plaintiff is subject to the tax are those mentioned in the minutes of the first meeting of the board of directors held May 13th, 1937,—(1) the contract by which plaintiff acquired 1,730 shares of the Pennsylvania corporation in exchange for twice that number of its own shares and (2) the recommendation to dissolve and liquidate the Pennsylvania corporation and to thereafter carry on through plaintiff the business of the Pennsylvania corporation, and an authorization to plaintiff's officers to do certain acts for that purpose.

The acquisition of the stock of the Pennsylvania corporation would not constitute "carrying on or doing business" under the decisions in Rose v. Nunnally Inv. Co., 5 Cir., 22 F.2d 102, and Eaton v. Phoenix Securities Co., 2 Cir., 22 F.2d 497, which were referred to with approval in New Haven Securities Co. v. Bitgood, 2 Cir., 87 F.2d 759, 761. Indeed in the Eaton case there was much more than what was done here.

The recommendation that the Pennsylvania corporation be dissolved and the adoption of resolutions authorizing plaintiff's officers to vote plaintiff's stock in the Pennsylvania corporation for the purpose of dissolving it and further authorizing them to offer to permit the minority stock of the Pennsylvania corporation to receive $333.33 a share for their stock payable out of the cash assets of the Pennsylvania corporation as a liquidating dividend and to accept for the taxpayer as its share the balance of the assets of the Pennsylvania corporation subject to the liabilities of the Pennsylvania corporation, was not carrying on or doing business. Although it is stipulated that the acquisition by the taxpayer of the assets of the Pennsylvania corporation was a necessary preliminary to the transaction by the plaintiff of its present business, the acts authorized by the directors were not performed until the next tax period. The recommendation at the directors' meeting was the outline of a plan by which plaintiff hoped to be able to operate the business of the Pennsylvania corporation directly in plaintiff's own name. But suppose the minority stockholders of the Pennsylvania corporation did not fall in with the plan? The authorization of an offer, in the resolution, did not constitute a contract. It was at best an expression of what the taxpayer corporation would like to do if the minority stockholders of the Pennsylvania corporation agreed to it. The only contract authorized and executed during the tax period in question was the one by which the plaintiff corporation acquired from certain individuals, its own officers, shares of stock of the Pennsylvania corporation, engaged in the same line of business as that in which the plaintiff intended to engage.

The stipulated facts are that "the plaintiff performed no other acts of any kind, nature or description until August 31, 1937". Taking it at its face value that would exclude any additional acts on the part of its officers in the plaintiff's interest during the tax period. Except for what was done the day the plaintiff corporation was organized, May 13, 1937, it was inert until after June 30, 1937.

■ As was stated by Judge Coxe in Hastings Pavement Co. v. Hoey, D.C., 28 F.Supp. 897, it will serve no useful purpose to review the many cases dealing with this vexed question. Each case must be decided on its own state of facts. The facts being admitted, whether they constitute "carrying on or doing business" is a question of law. United States v. Peabody Co., 6 Cir., 104 F.2d 267. But there are a few cases that were discussed in the briefs of counsel which require consideration.

The government relies heavily on the case of Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 52 F.2d 55, 57. In the Argonaut case the corporation had, during the tax period, loaned money, invested money in speculative enterprises, and advanced money to its parent company, none of which we have in the case at bar. The appellate court in the Argonaut case in discussing the activities of the corporation said: "The sum of all these dealings appears to us to carry the corporation outside the class of those inert companies, which can assert that they are mere dry holders of property, and conduits to carry over its profit to the persons eventually entitled". See, also, United States v. Three Forks Coal Co., 3 Cir., 13 F.2d 631. The plaintiff in the present case was, during the tax period, only a "dry holder" of 80% of the shares of stock of the Pennsylvania corporation. In fact the plaintiff corporation did not receive any dividends on the stock it held and paid out not a single penny to anyone. The only office plaintiff had was the statutory one, with a corporation whose business appears to be, in part at least, to supply a corporate address for newly organized corporations.

There is a clear distinction between the case at bar and Associated Furniture Corporation v. United States, Ct.Cl., 44 F.2d 78. In that case, in addition to exchanging its stock for the stock of subsidiary corporations, the directors authorized the officers to enter into certain contracts, which were to be effective as of June 15th. In the present case the agreed facts indicate that nothing was done by the officers of the corporation prior to July 1st to ne-

538

gotiate or consummate the desired arrangement with the minority stockholders of the Pennsylvania corporation, or to take any steps to liquidate that corporation.

I believe there has been a showing of "inertness and passivity" on the part of plaintiff corporation during the tax period which relieves it from the capital stock tax for that period. A case that resembles somewhat the case at bar is Mason v. United States, D.C., 27 F.2d 1013, which does not appear to have been cited in any later case.

Plaintiff's motion for summary judgment is granted; defendant's motion is denied. Submit order accordingly, on notice.