ALLEN v. ROGAN, Collector of Internal Revenue.

No. 1121—B.

District Court, S. D. California, Central Division.

June 7, 1941.

Joseph D. Brady, of Los Angeles, Cal., for plaintiff.

Wm. Fleet Palmer, U. S. Atty., and E. H. Mitchell, and Armond Monroe Jewell, Asst. U. S. Attys., all of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

Plaintiff sues to recover the principal sum of $1,683.17, alleged to have been erroneously and illegally assessed and collected as "capital stock tax" under applicable revenue laws of the United States and, particularly, Section 601(a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev. Acts, page 1139. Refund, credit and repayment have been duly claimed and have been denied by the Commissioner of Internal Revenue.

It is conceded that the sole questions for decision are: (1) Was Trust 2912—Haserot, during the taxable year commencing July 1, 1937, and ending June 30, 1938, an association within the meaning of the revenue statutes? and, if the court finds that such trust was such an association, then (2) Was such trust carrying on or doing business during part of the above-mentioned taxable period?

We think that under the record before us both questions should be answered in the affirmative.

Section 601 of the Revenue Act of 1938 provides: "Capital stock tax. (a) For each year ending June 30, beginning with the year ending June 30, 1938, there is hereby imposed, upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

Section 901 of the same Act, 26 U.S. C.A. Int.Rev.Acts, page 1161, as far as pertinent to our inquiry, is as follows: "Definitions. (a) When used in this Act— (1) The term 'person' means an individual, a trust or estate, a partnership, or a corporation. (2) The term 'corporation' includes associations, joint-stock companies, and insurance companies. * * *"

There is no serious dispute as to the facts of the case at bar. Most of them are covered by stipulation in the record and therefore any detailed statement of the facts in this memorandum is considered unnecessary.

At the outset it is to be observed that the determination of the commissioner is presumptively correct and the burden is upon the taxpayer to prove tax nonliability. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; United States v. Trust Number B.1. 35, 9 Cir., 107 F.2d 22; United States v. Peabody Co., 6 Cir., 104 F.2d 267. We find that the taxpayer in the case at bar has failed to overcome the presumption above stated and has not sustained his burden of proof.

Very brief mention of the purposes and objects of the trust here under consideration is all that is necessary to show that such trust is not "the traditional type of trust," reposed in executors or testamentary trustees or media established solely as instrumentalities for conserving an estate and protecting its income. See United States v. Pyne, et al., 61 S.Ct. 893, 85 L. Ed. ——, decided by the Supreme Court April 28, 1941.

The declaration of trust and the evidence of the operations under it show the creation of a business medium through and by which a number of persons or associates formed a joint enterprise for profit sharing wherein individual proprietary status in the trust is evidenced by transferable certificates of beneficial interest which are issued to investors in the enterprise. The total number of "parts or shares" authorized by the declaration of trust to be issued is 250. The certificate holders and owners are individually obligated pro rata to financially sustain the trust in the event that the income or proceeds from sales of the corpus of the trust is insufficient to do so, and in case of failure to pay his proportionate share of a trust deficiency after written demand and advertisement of sale by publication in a newspaper, the interest of such defaulting beneficiary may be sold at public auction to the highest bidder for cash, to whom the trustee shall assign the defaulting investor's beneficial certificate and who thereupon becomes a shareholder in the trust.

These mechanics of operation and methods, with others, such as centralized

426

control under the direction of at least two-thirds of the beneficial interests are strikingly analogous to corporate processes and thus definitely identify Trust Number 2912 as an association within the meaning of Section 3797 (a), (3), Internal Revenue Code. Morrissey v. Commissioner, etc., 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263.

We therefore pass to a consideration of the second question for decision.

■ In Von Baumbach, Collector v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460, wherein the Supreme Court reviews several of its earlier decisions, including McCoach, Collector, v. Minehill & Schuylkill Haven R. R. Co., 228 U.S. 295, 33 S.Ct. 419, 421, 57 L.Ed. 842, heavily relied upon by the plaintiff, relating to the meaning of "carrying on or doing business" in corporate tax laws, it is stated [242 U.S. 503, 37 S.Ct. 204, 61 L. Ed. 460]:

"It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

And in the recent case of Higgins et al. v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 478, 85 L.Ed. ——, decided February 3, 1941, the Supreme Court reiterated this principle as follows: "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." To the same effect is United States v. Pyne, et al., supra.

■ Assuming arguendo that from the date of the creation of the trust on September 17, 1913, until the commencement of the taxable year involved in this action the activities of the trust had been confined solely to the payment of the taxes, trustee's fees and expenses and the assessment of certificate holders to secure funds with which to make such imperative payments, the history of the transactions and operations of the trust revealed by the record before us indisputably demonstrates not only that the trust during part of the taxable year 1937-1938 was a going business concern but also that it had been during such period a profitable and successful one. An enterprise, such as the trust under consideration, which does business during part of a taxable year, is subject to capital stock tax. New Haven Securities Co. v. Bitgood, 2 Cir., 87 F.2d 759.

The very prudent action in the State court to have declared the power of the trustee under the declaration of trust to make an oil lease and thereby not only preserve the corpus of the trust, but at the same time to enable the trustee to arrange and enter into a venturesome project in the petroleum industry, stamps the trust as "doing business." Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 52 F.2d 55.

The lease negotiated and consummated by the trustee involved business acumen of a high order. It was not the mere custodial performance of one whose paramount concern was the mere collection of rents and royalties. The trustee took bids from several oil producing companies, exercised scrutiny, circumspection and discretion in analyzing them and reached decision as to the most satisfactory. He encountered difficulties and obstacles with the City of Long Beach and conferred and negotiated with the municipal authorities, with the result that he finally surmounted all barriers and effectuated an oil and gas lease with the Republic Petroleum Company during the taxable year in issue, wherein he received a bonus of $25,000, $20,000 of which he distributed to the beneficiaries under Trust Number 2912 during the taxable year involved. In addition to the bonus the investors or beneficiaries have been receiving shares of royalties from producing oil wells which have been brought in under the lease. The wells are still profitably productive and royalties continue to be received every thirty days. The duration of the lease, like all such arrangements, is dependent upon paying quantities of production, but the lease has a stated term of twenty-five years.

This deal alone would, we think, fully meet the capital stock taxable requirement of "doing business." There are, however, other activities of the trustee during the taxable year which further show the trust to have been a taxable association within the meaning of the revenue laws of the United States.

After the oil lease had been made with Republic Petroleum Company, the trustee

learned that one John Harvey, a stranger to the trust, operating a water taxicab service near the property of the trust estate, had, without the permission or consent of the trustee, buried gasoline storage tanks on the property of the trust and had likewise constructed a "catwalk" in the channel in front of the trust property. These utilities inconvenienced the trust's lessee. The trustee learned that a bankrupt corporation which owned the adjacent property had been collecting rent from Harvey for the use of the areas utilized by him. The trustee caused proceedings to be instituted before the referee in bankruptcy to recover a portion of the money that Harvey had paid the bankrupt estate and the referee made an allowance of $1,000 to the trust. The trustee also received from Harvey $50 per month beginning May, 1938, as a consideration for the privilege of continuing to use the trust property for the storage tank and "catwalk" facilities.

It is clear that the transactions of the trustee which we have mentioned were not casual or isolated incidents; they are substantial factors in the business of the trust and constitute regularity and continuity of dealing by the trustee in the discharge of his duties under the declaration of trust. Compare Commissioner, etc. v. Boeing, 9 Cir., 106 F.2d 305.

We conclude by holding that the plaintiff was properly assessed, charged and required to pay "capital stock tax" for the taxable year beginning July 1, 1937, and that no refund, credit or repayment is allowable. Findings and judgment ordered for defendant with costs.