### NEW LONDON NORTHERN R. CO. v. SMITH.

#### No. 704.

District Court, D. Connecticut, Hartford Division.

Jan. 15, 1943.

Brown & James, of Norwich, Conn., Arthur M. Brown, of Norwich, Conn., for plaintiff.

Valentine J. Sacco, Asst. U. S. Atty., and Robert P. Butler, U. S. Atty., both of Hartford, Conn., for defendant.

SMITH, District Judge.

This is an action for the recovery of $1,871, representing capital stock taxes paid for the taxable period ended June 30, 1936, and imposed under the provisions of Section 105 of the Revenue Act of 1935, as amended by Section 401 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 796, 943. The applicable sections of these statutes and the Treasury regulations thereunder are as follows:

Revenue Act of 1935, c. 829, 49 Stat. 1014:

"§ 105. Capital Stock Tax

"(a) For each year ending June 30, beginning with the year ending. June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock."

Revenue Act of 1936, c. 690, 49 Stat. 1648:

"§ 401. Capital Stock Tax

"(a) Section 105 of the Revenue Act of 1935 is amended by striking out '$1.40' wherever appearing therein and inserting in lieu thereof '$1'".

Treasury Regulations 64 (1936 Ed):

Art. 42. Doing Business. The term "business" is very comprehensive and embraces whatever occupies the time, attention, or labor of men for profit. Accordingly, regardless of the nature of its activities, any corporation organized for profit and carrying out the purpose of its organization is doing business within the meaning of the Act. Similarly, even if not organized for profit, any corporation which nevertheless engages in activities ordinarily carried on for profit is also doing business. It is immaterial whether the activities result in a profit or a loss, whether the corporation has been successful in its enterprise, or that because of unfavorable business conditions, no operations are carried on for a particular period. No particular amount of business need be done, nor is it necessary that the business be continuous throughout the taxable year.

The case is exceptional in which the activities of a corporation organized for profit do not amount to doing business within the meaning of the Act. Such a case is generally limited to one in which the corporation is not pursuing the ends for which organized, i. e., profit.

Art. 43. Illustrations. (a) General. In general, "doing business" includes any activities of a corporation whether it engages in—

(1) buying, selling, manufacturing, developing, financing, speculating or otherwise dealing in property of any description;

(2) furnishing services of any character;

(3) leasing or managing properties, collecting rents or royalties;

(4) managing, financing, controlling or directing the operations, performing any function, or, in any other way, aiding or serving the general purposes of any affiliated or related company;

(5) the orderly liquidation of property by negotiating sales from time to time as opportunity and judgment dictate, and distributing the proceeds as liquidation is effected—for example, the liquidation of an estate, or of properties taken over from another corporation, or of the shareholders' fractional interests in particular property; or

(6) any other activities coming within the ordinary and natural significance of the term "carrying on or doing business".

(b) Exceptions. Ordinarily the exceptions to "doing business" are restricted to limited activities of a corporation, such as—

(1) the issuance and sale of its stock for cash as a preliminary step in the completion of its organization; or

(2) the distribution of the avails of property and the doing only of such acts as may be necessary for the maintenance of its corporate status in the case in which the corporation either was organized for, or has reduced its activities to, the mere owning and holding of specific property. Nor will a corporation be regarded as "doing business" if it has no activities, because it has—

(3) become dormant; or

(4) completed its business, as, for example, where prospective oil properties are proven worthless. If the corporation's activities are not so limited as outlined in the preceding paragraph, it will be regarded as "doing business" within the meaning of the Act. Thus, a corporation is "doing business" if—

(A) In addition to the activities described in paragraph (b) (1) it engages in any other activity such as the making of contracts, the buying of materials or machinery, the construction of buildings, or the employing or discharging of individuals; or

(B) In addition to the activities described in paragraph (b) (2) it engages in any other activity such as (i) in the case of a company holding securities, the investment or reinvestment of surplus or other funds in excess of an amount necessary to maintain its original investments; or (ii) in the case of a company which had leased its property to another, the maintaining or keeping the property in repair in accordance with the terms of the lease, or in other activities to enable the lessee properly to manage the leased property, regardless of whether such activities are performed on behalf and under the order of the lessee or that such acts are not of major importance; or

(C) Although it retires from its principal business, it nevertheless engages in other business activities or maintains its organization for the purpose of continued effort in the pursuit of profit or gain.

Plaintiff formerly operated a railroad system, which it leased in 1891 on a 99 year lease. Included in its properties under the lease was a steamboat line, operated by the lessees until 1909 when a subsidiary corporation was formed to operate this line. Because of foreign ownership of the then lessee, it became necessary for the lessee in 1935 to divest itself of majority ownership of the steamboat operating subsidiary. The plaintiff in 1935 purchased from its lessee the controlling stock interest in the steamboat operating subsidiary, borrowing from a bank funds to finance the purchase, which it repaid to the bank in the tax year here in question. Plaintiff replaced a majority of the directors and officers of the subsidiary with men of its own designation, and has since maintained in this manner the power to control operation of the subsidiary.

Plaintiff apparently takes the position that conditions in the transportation business, particularly over the last ten years, required that a lessor, for the protection of its own shareholders, act as something more than a mere dry conduit between the lessee and plaintiff's bondholders and shareholders for funds paid it under the lease, and that the activities it found necessary or desirable to protect its leased property and its own financial position should not be considered "doing business" under the tax laws. Certainly the present financial condition of the plaintiff corporation is a tribute to the business judgment of its directors in building up surplus funds to service refunding of its debt and in deciding to purchase a controlling interest in the steamboat company when that became necessary.

The question here, however, is not whether these activities and any others in which the plaintiff may have engaged were either necessary or desirable for the protection of the interests of the plaintiff and its shareholders, but rather whether they amounted to such activity as to require the payment of the capital stock tax by the plaintiff as a corporation carrying on or doing business during the tax year in question. Plaintiff relies heavily on the case of McCoach v. Minehill & Schuylkill Haven Railroad Company, 1913, 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, in which a railroad company which had leased all its railroad properties was held exempt from the tax as not carrying on nor doing business, even though it appears that there was a substantial income from investments other than the lease. The instant case, however, shows a greater degree of activity on the part of the lessor than appears from the

opinion to have been present in the Mine-hill case. Edwards v. Chile Copper Co., 1926, 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678, indicates that the Supreme Court would no longer exempt a holding company from the tax merely because of double taxation of the holding company and its operating subsidiary in relation to the business carried on by the operating subsidiary, but would look rather to the entire activities of the holding company to determine whether it was doing business under the Act.

On the facts, this case lies somewhere between those cases. The question is whether, on the facts, the Commissioner is justified in holding that the plaintiff is doing business in its corporate capacity so as to incur liability to this tax.

The plaintiff, in purchasing the steamboat company stock, borrowing and repaying money for the purpose, in authorizing its officers to borrow money and loan it to the steamboat company, used its corporate existence to accomplish ends of great value to its lessee and to its own shareholders.

Although the activities taking place in the tax year here in question were few, including the repayment of money borrowed to purchase the steamboat company stock, the holding and voting of that stock, and the termination of the authority given an investment committee, they may be interpreted in the light of the activities of the corporation in the years immediately preceding and following the tax year in question. Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 1931, 52 F.2d 55.

Further, that each action need not be separated from its fellows and judged alone is settled by the ruling in the Chile Copper case, supra: "We do not rest our conclusion upon the issue of bonds in the first year or the call loans made in the last, and for the same reasons we cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must be judged as a whole." 270 U.S. at page 455, 46 S.Ct. at page 346, 70 L.Ed. 678.

It is obvious that this case differs on the facts from the Minehill case in that there is more activity in this case on the part of the lessor corporation with regard to the lessee, with regard to investments and refunding operations, and with regard to the steamboat-operating subsidiary. It would, therefore, appear that the interpre-tation of the meaning of the term "doing business" cannot be made to depend in this case on the precedent of the Minehill case.

While it is difficult, if not impossible, to reduce to a simple formula the results reached in the many decisions on corporate activities as constituting "doing business" under this and similar tax statutes, I feel that, in this case, plaintiff's activities in its corporate capacity during the taxable period ended June 30, 1936, portray a living, acting corporate body, rather than a mere channel for funds, and constitute doing business within the meaning of the capital stock tax act.

Judgment may be entered for the defendant in accordance with this opinion.